38 F.3d 1216
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Timothy SINGER, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 94-3039.
 United States Court of Appeals, Sixth Circuit.
 Oct. 24, 1994.
 
 Before: MILBURN and DAUGHTREY, Circuit Judges; and WEIS, Senior Circuit Judge.*
 MILBURN, Circuit Judge.
 
 
 1
 Petitioner Timothy L. Singer appeals the district court's denial of his motion to vacate sentence filed pursuant to 28 U.S.C. Sec. 2255. On appeal, the issues are (1) whether the district court erred in concluding that petitioner's conviction under 18 U.S.C. Sec. 844(h)(1) was proper; (2) whether the district court erred in concluding that petitioner's conviction under 18 U.S.C. Sec. 241, Count 1 of the indictment, was not unlawful because his conduct, "cross burning," was not constitutionally protected under the First Amendment; and (3) whether the jury instructions given at petitioner's trial were so defective as to deny petitioner a fundamentally fair trial. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On August 12, 1993, at approximately 9:30 p.m., two black males were walking down Ute Avenue in Massillon, Ohio, playing loud music on a "boom box" radio. Petitioner was backing his car out of his carport and on to Ute Avenue. Petitioner, his girlfriend, Carol Johnson, and at least one other person were occupants in petitioner's car. Someone in petitioner's car then yelled a racially derogatory remark to the two black males; namely, "will you damn niggers turn that mother f****** music down." J.A. 50. A fight ensued between the two black males and the white passengers in the automobile, which resulted in one of the black males striking petitioner in the mouth with a brick.
 
 
 3
 At some point during the altercation, one of petitioner's neighbors telephoned the police. When the police arrived at the scene, the two black youths fled. Petitioner was enraged and yelled racial epithets such as "you mother f****** niggers come out now." J.A. 52. The police left the scene after unsuccessfully attempting to calm petitioner down.
 
 
 4
 Approximately an hour later, petitioner walked over to his neighbors who were sitting on their front porch. He stated that he had a half-stick of dynamite and a handgun in his pocket and was going to "blow up all those mother f****** niggers." J.A. 52, 68-69.
 
 
 5
 Shortly thereafter, Todd J. Gresser, petitioner's co-defendant, arrived at petitioner's house. Petitioner and Gresser constructed a cross, nine feet tall, and placed it near a fence that separated the houses of two black families who lived across the street from petitioner. Petitioner and Gresser then ran across the street yelling additional racially derogatory remarks and threats such as "[y]ou mother f****** niggers. You got what's coming to you. You're going to die." J.A. 71. As petitioner and Gresser entered petitioner's front yard, there was a loud explosion which rattled windows in the neighborhood, and the cross was engulfed in flames.
 
 
 6
 The following morning, words such as "die nigger KKK," "KKK rules," "KKK" and "f*** you nigger," J.A. 61, 73, 74, were spray painted on the homes of black families in the immediate vicinity of petitioner's home. Petitioner and Gresser had been heard shouting these same threats both before and after the cross burning.
 
 B.
 
 7
 On September 21, 1989, a federal grand jury returned a three count indictment against petitioner and his co-defendant, Todd J. Gresser. In Count 1 of the indictment, petitioner was charged with conspiring to injure, oppress, threaten, and intimidate black citizens in the free exercise of their right to hold and occupy their dwellings without injury, intimidation, or interference because of their race or color in violation of 18 U.S.C. Sec. 241. Count 2 charged petitioner with employing force or threat of force to willfully injure, intimidate, and interfere with black citizens in the occupation of their dwellings because of their race or color in violation of 42 U.S.C. Sec. 3631(a). Count 3 charged petitioner with willfully using fire to commit the felony of conspiring to violate the civil rights of black citizens in violation of 18 U.S.C. Secs. 2 and 844(h)(1).
 
 
 8
 On January 22, 1990, a jury found petitioner guilty on all counts. On April 30, 1990, petitioner was sentenced to 27 months incarceration and three years supervised release.
 
 
 9
 Subsequently, on May 4, 1990, petitioner filed a timely direct appeal to this court, challenging the sufficiency of the evidence to support the convictions and the calculation of the offense level relied on to determine his sentence. On May 28, 1991, this court affirmed petitioner's convictions; however, we vacated the sentence and remanded the case for recalculation of petitioner's offense level and resentencing. See United States v. Gresser, 935 F.2d 96 (6th Cir.), cert. denied, Singer v. United States, 112 S.Ct. 239 (1991). On remand, petitioner's sentence was increased to 37 months incarceration.
 
 
 10
 On February 11, 1993, petitioner filed a motion to vacate his sentence under 28 U.S.C. Sec. 2255 asserting: (1) that the Supreme Court's decision in R.A.V. v. City of St. Paul, Minn., 112 S.Ct. 2538 (1992), mandated reversal of his conviction under 18 U.S.C. Sec. 241, because the Court in R.A.V. held that conduct such as cross burning was expressive conduct protected under the First Amendment; and (2) that his conviction under 18 U.S.C. Sec. 844(h)(1) could not be sustained because he did not commit arson. The district court denied petitioner's motion to vacate his sentence in a memorandum and order issued on December 28, 1993. This timely appeal followed.
 
 II.
 A.
 
 11
 Petitioner argues that the district court erred in finding that his conviction under 18 U.S.C. Sec. 844(h)(1) was proper. Petitioner asserts, relying on the decision of the Eighth Circuit in United States v. Lee, 935 F.2d 952 (8th Cir.1991), reh'g en banc granted and judgment rev'd in part, 6 F.3d 1297 (8th Cir.1993), cert. denied, 114 S.Ct. 1550 (1994), that 18 U.S.C. Sec. 844(h)(1) was enacted to facilitate the prosecution of crimes involving arson and that his act of cross burning was not the commission of arson.
 
 
 12
 We conclude that since this issue was decided in petitioner's direct appeal, he may not use a motion to vacate sentence under 28 U.S.C. Sec. 2255 to relitigate this issue on collateral attack. On petitioner's direct appeal, we stated in United States v. Gresser, 935 F.2d 96 (6th Cir.), cert. denied, 112 S.Ct. 239 (1991):
 
 
 13
 With regard to the third count [18 U.S.C. Sec. 844(h)(1) ] charging the use of fire to commit a felony,
 
 
 14
 * * *
 
 
 15
 The contention that [petitioner's] rage was directed only at one black youth rather than blacks in general is unpersuasive and belied by his actions ... A reasonable juror could conclude that [petitioner] instigated the cross-burning ... Moreover, construing the evidence in a light most favorable to the government, [petitioner] chose an age old symbol of racism, and ... waged his racist battle ... adjacent to the homes of his black neighbors.
 
 
 16
 * * *
 
 
 17
 These facts are sufficient to support a reasonable juror in the inference that [petitioner and his co-defendant] had a tacit conspiratorial objective to intimidate the black persons living in the vicinity of [petitioner's] home ... It matters little who actually performed the act of igniting the cross and detonating the explosives.... Thus, we hold that there was sufficient evidence to support the convictions.
 
 
 18
 Id. at 101.
 
 
 19
 Absent exceptional circumstances, such as an intervening change in the law, it is well-settled that a motion filed under Sec. 2255 may not be used to relitigate issues on collateral attack which were raised and considered on direct appeal. United States v. Prichard, 895 F.2d 789, 790-91 (10th Cir.1989) (per curiam); Barton v. United States, 791 U.S. 265, 267 (2d Cir.1986) (per curiam); Stephens v. United States, 496 F.2d 527, 528 (6th Cir.1974) (per curiam), cert. denied, 423 U.S. 861 (1975). Therefore, since the issue of the sufficiency of the evidence to support petitioner's conviction under 18 U.S.C. Sec. 844(h)(1) was considered and decided adversely to him on direct appeal, we conclude that petitioner's attempt to relitigate this issue on collateral attack is barred.[1]
 
 
 20
 Furthermore, in discussing the propriety of defendant's sentence on direct appeal, we also addressed the arson issue. In challenging the sentence imposed by the district court for his violation of 18 U.S.C. Sec. 844(h)(1), "Singer argue[d] that [U.S.S.G.] section 2K1.4 d[id] not apply because his crime did not involve arson under any accepted definition of that term." Id. at 102. We rejected Singer's argument, however, relying on the reasoning of the Eleventh Circuit in United States v. Worthy, 915 F.2d 1514 (11th Cir.1990). Id. at 102-03.
 
 
 21
 Thus, even if we were to conclude that this issue had not been addressed as part of defendant's challenge to his conviction on direct appeal, we would find that this issue has been waived. See, e.g., Ratliff v. United States, 999 F.2d 1023, 1025 (6th Cir.1993) (claims which could have been raised on direct appeal may also not be raised in a Sec. 2255 motion unless the defendant demonstrates cause and prejudice for his failure to do so). In this case, defendant raised the arson issue with great specificity as part of the challenge to his sentence. He did not, however, address the issue with such specificity as part of the challenge to his conviction under 18 U.S.C. Sec. 844 on direct appeal. Therefore, to the extent that defendant is attempting to raise this issue with a greater degree of specificity in challenging his conviction under 18 U.S.C. Sec. 844 in this Sec. 2255 motion, he has waived this issue.
 
 B.
 
 22
 Petitioner argues that his conviction under 18 U.S.C. Sec. 241 cannot stand because the act of "cross burning" is an expressive act protected by the First Amendment. Section 241 criminalizes conspiracies which threaten or intimidate an individual in the free exercise of any right or privilege provided in the United States Constitution or federal statutes. Section 241 provides in relevant part:
 
 
 23
 If two or more persons conspire to injure, oppress, threaten, or intimidate any inhabitant of any State ... in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same ... They shall be fined not more than $10,000 or imprisoned not more than ten years, or both.
 
 
 24
 18 U.S.C. Sec. 241. The right protected by Sec. 241 which is involved in this case is set forth in 42 U.S.C. Sec. 3631(a), which provides in relevant part:
 
 
 25
 Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with--
 
 
 26
 (a) any person because of his race, color ... and because he is or has been selling, purchasing, renting, financing, occupying, or contracting or negotiating for the sale, purchase, rental, financing or occupation of any dwelling
 
 
 27
 * * *
 
 
 28
 shall be fined not more than $1,000, or imprisoned not more than one year, or both....
 
 
 29
 42 U.S.C. Sec. 3631(a). We think it is appropriate to begin this discussion by reiterating the Supreme Court's statement in R.A.V. v. City of St. Paul, Minn., 112 S.Ct. 2538 (1992): "Let there be no mistake about our belief that burning a cross in someone's front yard is reprehensible." Id. at 2550. Certain "conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First ... Amendment[ ].' " Texas v. Johnson, 491 U.S. 397, 404 (1989) (quoting Spence v. Washington, 418 U.S. 405, 409 (1974)). Cross burning is expressive conduct sufficient to invoke the First Amendment in challenging a conviction based upon it. R.A.V., 112 S.Ct. at 2542.
 
 
 30
 However, certain categories or modes of expressive conduct fall outside of the protection of the First Amendment. See, e.g., Brandenburg v. Ohio, 395 U.S. 444, 447 (1969) (per curiam). The categories of speech which are not within the sphere of First Amendment protection include obscenity, see Roth v. United States, 354 U.S. 476 (1957); defamation, see Beauharnais v. Illinois, 343 U.S. 250 (1952); fighting words, see Chaplinsky v. New Hampshire, 315 U.S. 568 (1942); advocacy of imminent lawless action, see Brandenburg v. Ohio, 395 U.S. 444 (1969) (per curiam); and, of particular relevance in this case, threats of violence, see Watts v. United States, 394 U.S. 705 (1969).
 
 
 31
 Intimidation through threats of physical violence is not protected by the First Amendment. See Watts, 394 U.S. at 707 (true threats are not constitutionally protected speech); United States v. Orozco-Santillan, 903 F.2d 1262, 1265-66 (9th Cir.1990) ("A 'true' threat, where a reasonable person would foresee that the listener will believe he will be subjected to physical violence upon his person, is unprotected by the first amendment."); United States v. Mitchell, 463 F.2d 187, 191 (8th Cir.1972) (violent threats are devoid of first amendment protection), cert. denied, 410 U.S. 969 (1973).
 
 
 32
 Because the conduct at issue in this case, cross burning, is expressive, the "relevant inquiry" is whether the statute or regulation that prohibited such conduct "is related to the suppression of free expression." Johnson, 491 U.S. at 403. "[A]lthough cross-burning can be done with the specific intent to intimidate and to interfere with the exercise of protected rights, in other situations, cross burning may be done for the sole purpose of making a political statement. As reprehensible as such a statement may be, 'we cannot take away the liberty of groups whose views most people detest without jeopardizing the liberty of all others whose views, though popular today, may themselves be detested tomorrow.' " United States v. J.H.H., 22 F.3d 821, 826 (8th Cir.1994) (citations omitted).
 
 
 33
 A statute or regulation is "related to the suppression of free expression" if it was enacted or applied to suppress conduct because of the ideas expressed or their "emotive impact" on viewers of the conduct. Boos v. Barry, 485 U.S. 312, 321 (1988). A statute or regulation is reviewed under a strict scrutiny analysis if the regulation seeks to suppress free expression; namely, if the statute seeks to suppress either the ideas expressed by conduct or the emotive impact of the ideas expressed by such conduct. Johnson, 491 U.S. at 403-04. The strict scrutiny analysis requires the government "to show that the 'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.' " Boos, 485 U.S. at 321 (quoting Perry Education Ass'n. v. Perry Local Educators' Ass'n., 460 U.S. 37, 45 (1983)).
 
 
 34
 However, a lesser standard of review under United States v. O'Brien, 391 U.S. 367 (1968) is applied where the "governmental interest is unrelated to the suppression of free expression." Johnson, 491 U.S. at 377. Under the less stringent standard, the government must establish: (1) that the regulation is within the constitutional power of the government, (2) that the regulation furthers an important or substantial governmental interest which is unrelated to the suppression of free expression, and (3) that any alleged incidental restriction to First Amendment freedoms is no greater than is essential to further the important or substantial governmental interest. O'Brien, 391 U.S. at 377.
 
 
 35
 Furthermore, there are two types of challenges to the validity of a statute under the First Amendment. A "facial validity" challenge asserts that statute applies only to speech protected by the First Amendment and, therefore, the "statute may not constitutionally be applied to any set of facts." United States v. Powell, 423 U.S. 87, 92 (1975). An "as applied" challenge requires a court to determine on a case-by-case analysis, whether the regulation as applied to the facts of the case abridges the First Amendment. Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 758-59 (1988).
 
 
 36
 In this case, petitioner has asserted an "as applied" challenge to Sec. 241, since he asserts that the government has applied the statute in a manner that abridges his right to free speech; namely, his right to express racial hatred through a cross burning. Thus, this case is distinguishable from the situation in R.A.V.
 
 
 37
 In R.A.V., the petitioner made and burned a cross in the front yard of a black family. The petitioner was prosecuted under an ordinance of the city of St. Paul, Minnesota, which prohibited bias or hate crimes. The petitioner asserted a facial validity challenge to the St. Paul ordinance. The Supreme Court found that the St. Paul ordinance was content based since it prohibited only "fighting words" which were related to " 'race, color, creed, religion, or gender.' " R.A.V., 112 S.Ct. at 2547. Due to the content based nature of the St. Paul ordinance, the Court applied a strict scrutiny analysis and held that the regulation was invalid because the city had not established that it was necessary to achieve a compelling interest. Id. at 2550.
 
 
 38
 Thus, the analysis used in R.A.V. is inapplicable here because petitioner has asserted an "as applied" challenge to the validity of Sec. 241. The first step in the analysis of the application of Sec. 241 to petitioner's expressive conduct is a determination of whether the government sought to suppress petitioner's ideas or the emotive impact arising out of the conduct. If the government applied Sec. 241 to petitioner's conduct because the government does not agree with the message conveyed by a cross burning or because the government sought to protect other citizens from the emotional impact associated with witnessing a cross burning, then the application of the statute was related to the suppression of free expression and a strict scrutiny analysis is required. Johnson, 491 U.S. at 403. On the other hand, if the government's interest in applying Sec. 241 was unrelated to suppressing the message conveyed by petitioner's conduct, the less strict O'Brien standard applies.
 
 
 39
 Whether the application of Sec. 241 to petitioner violated his First Amendment rights depends upon the jury instructions given at his trial. See United States v. Lee, 6 F.3d 1297, 1300 (8th Cir.1993) (per curiam) (en banc) (citing Brandenburg v. Ohio, 395 U.S. 444, 448-49 (1969)), cert. denied, 114 S.Ct. 1550 (1994).
 
 
 40
 In this case, the jury was instructed that petitioner and his co-defendant, Gresser, were charged with "willfully combin[ing], conspir[ing], confederat[ing] and agree[ing] together and with each other to injure, oppress, threaten and intimidate black citizens of the United States ... in the free exercise of rights secured to them by the constitution and laws of the United States." The jury was further instructed that petitioner and Gresser must have acted "with the specific intent to injure, intimidate, or interfere" with the residents' rights to hold and occupy their houses free from threats of intimidation on account of race." Tr. 229, 231, 236. Since the question as to whether or not petitioner's conduct threatened or intimidated black citizens depends upon the communicative impact and emotive impact of the conduct on its audience, namely, the subjective reactions of the witnesses to the cross burning, see Lee, 6 F.3d at 1300, the application of Sec. 241 to petitioner's conduct is related to the suppression of free expression and its application must be reviewed under a strict scrutiny analysis.
 
 
 41
 However, under the strict scrutiny analysis, the application of a statute or regulation will be upheld if the expression regulated falls within one of the categories of speech which is not protected by the First Amendment. Lee, 6 F.3d at 1302-03. As noted previously, intimidation in the form of threats of physical violence is not protected by the First Amendment. See Watts v. United States, 394 U.S. 705 (1969).
 
 
 42
 Section 241 protects the free exercise of all rights and privileges secured by the Constitution and the laws of the United States. United States v. Price, 383 U.S. 787, 800 (1966). Furthermore, the statute requires that the government prove that a defendant had the specific intent to interfere with the federal rights in question. United States v. Guest, 383 U.S. 745, 753-54 (1966). This specific intent requirement, combined with the district court's jury instructions, ensures that Sec. 241 was not applied to defendant's constitutionally protected speech, but only to his attempt to intimidate through threats of violence which are not constitutionally protected under the First Amendment.
 
 
 43
 Petitioner asserts that his action in burning the cross was a constitutionally protected statement of racial supremacy. However, in this case, the jury was instructed that to convict petitioner they must find that he acted with the specific intent to injure, intimidate or interfere with the right of black residents to hold and occupy their dwellings. Tr. 229, 231, 236. After receiving such instructions, the jury convicted defendant.
 
 
 44
 Further, the record does not suggest that petitioner burned the cross to express feelings of racial supremacy. In this case, petitioner constructed and burned the cross following an altercation with two black youths. Following this altercation, and prior to the cross burning, petitioner told his neighbors that he had a gun and a half-stick of dynamite and was out to "get those f****** niggers." Moreover, petitioner not only yelled racially derogatory statements and threats both before and after burning the cross, but he spray painted racially derogatory statements and threats on the homes of black residents in the vicinity of the cross burning.
 
 
 45
 Further, on direct appeal, this court stated that "the contention that [petitioner's] rage was directed only at one black youth [the individual who struck him in the mouth with a brick], rather than blacks in general is unpersuasive and belied by his actions." Gresser, 935 F.2d at 101. "[Petitioner] chose an age old symbol of racism, and, ... waged his racist battle ... adjacent to the homes of his black neighbors." Id. "These facts are sufficient to support a reasonable juror in the inference that [petitioner and his co-defendant] had a tacit conspiratorial objective to intimidate the black persons living in the vicinity of Singer's home. The testimony ... showed that the conspirators did indeed intimidate black residents." Id.
 
 
 46
 Furthermore, the case of United States v. Lee, 6 F.3d 1297 is unavailing to petitioner. In Lee, the defendant constructed and burned a cross on a hill which was approximately 386 feet from an apartment complex in which a number of black persons resided. Lee, 6 F.3d 1298. The defendant was convicted under Sec. 241; however, the Eighth Circuit reversed defendant's conviction and remanded the case for a new trial, finding that the jury instructions were defective. Id. at 1304. The Eighth Circuit also noted that there was sufficient evidence from which a jury could infer that the defendant's actions involved the threatened use of force against the residents of the apartments, or at least intended the cause the residents to reasonably fear that force was imminent. Id. at 1303. The Eighth Circuit stated that
 
 
 47
 [i]n light of the history of violence associated with the Ku Klux Klan, a jury could reasonably conclude that [defendant's] intent in burning the cross was to threaten violence. Accordingly, sufficient evidence exists from which a jury could reasonably conclude that by burning the cross [defendant] intended to threaten acts of violence against the black residents of the apartment[s] or at least intended to cause the residents to reasonably fear the use of imminent force or violence.
 
 
 48
 Id. at 1304. Unlike the situation in Lee, petitioner burned the cross in this case between the homes of two of his black neighbors. Further, the act of burning the cross was accompanied by a loud explosion, the yelling of racial threats and epithets, and the spray painting of racial threats on the homes of several black residents. Therefore, petitioner was not convicted under Sec. 241 for acts which expressed or advocated racial supremacy. Rather, petitioner's threats and acts of intimidation are not protected by the First Amendment, and petitioner's conviction under 18 U.S.C. Sec. 241 is not constitutionally invalid.
 
 C.
 
 49
 Petitioner argues that his conviction should be reversed because the jury instructions given by the district court at his trial were so defective as to deny him a fundamentally fair trial. However, although petitioner has raised the issue in his pro se brief on appeal, he did not raise the issue before the district court.
 
 
 50
 Unless exceptional circumstances are present, this court normally will not address an issue not raised for the first time in the district court. See Foster v. Barilow, 6 F.3d 405, 407 (6th Cir.1993); Chandler v. Jones, 813 F.2d 773, 777 (6th Cir.1987). Furthermore, in order to obtain collateral relief in a Sec. 2255 proceeding, "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). In order "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."[2] Id. at 167-68.
 
 
 51
 In this case, petitioner has not addressed the issue of cause and prejudice in his brief on appeal. Further, petitioner has not even addressed the reasons why he failed to raise this issue in his Sec. 2255 motion. Accordingly, we will not address this issue for the first time on appeal.
 
 III.
 
 52
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 
 *
 Honorable Joseph F. Weis, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 We note that the issue of the sufficiency of the evidence to support petitioner's conviction under 18 U.S.C. Sec. 241 was also considered and decided adversely to him on direct appeal. However, in this appeal petitioner contends, in effect, that the decision of the Supreme Court in R.A.V. v. City of St. Paul, Minn., 112 S.Ct. 2538 (1992) constitutes an intervening change in the law regarding the sufficiency of the evidence to support his conviction under 18 U.S.C. Sec. 241. Accordingly, we conclude that petitioner's collateral attack under Sec. 2255 is not barred with regard to this issue, because the issue he has raised falls within one of the narrow exceptions to the rule that a prisoner may not relitigate issues in a Sec. 2255 motion that have been raised and decided on direct appeal
 
 
 [2]
 A review of the trial transcript shows that petitioner's trial counsel stated that he had no objections to the jury instructions. Tr. 245